IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

                                                13-CR-19-EAW

NINA JAFARI a/k/a Fatemeh Jafari,

            Defendant.

_____

**AFFIDAVIT IN SUPPORT OF GOVERNMENT'S MOTION
FOR A PRELIMINARY ORDER OF FORFEITURE**

STATE OF NEW YORK  )
COUNTY OF ERIE      ) SS:
CITY OF BUFFALO    )

I, Thomas W. Provost, being duly sworn, deposes and states as follows:

1.    I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for more than twelve years. I have a bachelor's degree and a J.D. degree. Upon joining the FBI, I was first assigned to the New Haven Division, where I investigated Health Care Fraud, Civil Rights violations and general White Collar crime. I transferred to the Buffalo Division in March 2008, and I am currently assigned to investigate Health Care Fraud matters as they relate to violations of Title 18, United States Code, Sections 1035 (False statement in connection with health care matters), 1347 (Health Care Fraud), 1956 (Money Laundering), and Title 42, Section 1320a-7b (Medicaid Fraud).

2. In connection with my investigation of Health Care Fraud matters, I am working with the Western New York Health Care Fraud Task Force ("HCFTF"), which is comprised of members from several different law enforcement organizations to include the FBI and the New York State Medicaid Fraud Control Unit ("MFCU"). The HCFTF is responsible for investigating allegations of fraud against private insurance companies and against government-funded programs.

3. As part of my duties, I have been involved with the HCFTF in the investigation of Nina JAFARI (aka Fatemeh Jafari), a Licensed Clinical Social Worker in Amherst, New York.

4. I make this affidavit in support of the Government's Motion for a Preliminary Order of Forfeiture in the case of the <u>United States vs. Nina Jafari a/k/a Fatemeh Jafari</u>, Docket No. 13-CR-19-EAW, which seeks a monetary judgment in the amount of $125,000.00.

5. During this investigation, I interviewed 15 different individuals who had sought counseling from the defendant, Nina JAFARI. Each of these interviews revealed irregularities in the way that the defendant was billing BlueCross and BlueShield of Western New York ("BCBS"). The majority of the irregularities, both in number and in dollar amount, stemmed from the defendant billing each of the individuals who saw the defendant in a family group therapy session as though they actually saw the defendant in an individual counseling session. This resulted in multiple billings of Current Procedural Terminology ("CPT") code 90808 (Individual therapy session lasting 75-80 minutes), when only a single billing of CPT code 90847 (Family Group therapy) should have occurred. The CPT code

90808 was by far the most common CPT code that the defendant billed to BCBS during the period of investigation from January 1, 2006, to April 30, 2009. During this time period, BCBS paid the defendant $323,600.99 for this code alone.

6. In conducting a review to determine the amount of fraudulent payments to the defendant, I analyzed the defendant's billing records for the five families included in the Indictment to calculate an average overpayment per family for which the defendant provided counseling. These families were the Kerns, the Sidotis, the Stegers, the Willis', and the Ferruccis. I looked at the CPT code that the defendant billed and then using the information I obtained from patient interviews and discussions with BCBS, I determined the correct CPT code that should have been billed by the defendant. I then utilized the rate of reimbursement that BCBS would have paid for that correct CPT code.[1] (Note: Because BCBS offers a variety of insurance plans to employers, the reimbursement rates for services differs depending on the plan that an individual patient may have through their employer.)

7. The Kern family, Amy and Stephen, sought the assistance of the defendant. As a result of billings the defendant submitted, BCBS paid the defendant $3,990.00 for counseling the Kerns. The Kerns advised that they always saw the defendant together in a joint family session and never in separate sessions. They also stated that they usually saw the defendant for one hour. Each time the Kerns saw the defendant, the defendant billed

---

[1] For the purposes of the government's motion for a Preliminary Order of Forfeiture and under the provisions of Title 18, United States Code, Section 982(a)(7) I understand that the defendant may be ordered to pay the gross proceeds derived from her illegal activity. However, for the purposes of my affidavit and since the government's motion only is seeking a monetary forfeiture judgment in the amount of $125,000.00, I will use the much more conservative approach of "overpayments" as the measure of the fraud, an amount that will greatly benefit the defendant. I will then contrast the total overpayments from my investigation with that of BCBS overpayments (¶ 15). Any method will more than amply support the requested forfeiture amount of $125,000.00.

BCBS for two sessions under the CPT code 90808. This resulted in BCBS paying the defendant two sessions at $95.00 each for a total of $180.00, per visit. In reality, the defendant was only entitled to bill BCBS one group therapy session, CPT code 90847, for a payment of $63.00 per visit. The Kerns saw the defendant on approximately 21 occasions and at $63.00 per visit, the defendant should have been paid $1,323.00 instead of $3,990.00. The resulting overpayment to the defendant was $2,667.00. See Government Exhibits 198-211C.

8. The Sidoti family, Jeanette and Stephen, also sought the assistance of the defendant. As a result of billings the defendant submitted, BCBS paid the defendant $5,950.00 for her counseling sessions with the Sidotis. Like the Kerns, the Sidotis only saw the defendant in group therapy sessions, which lasted for less than an hour. (The defendant did see Jeanette for a separate Worker's Compensation case, which was covered by another insurance company and not BCBS). As she did with the Kerns, the defendant billed BCBS for two individual sessions under CPT code 90808 each time the Sidotis had a session with her. As a result, BCBS paid the defendant two sessions at $85.00 each for a total of $170.00 per visit. In reality, the defendant was only entitled to bill BCBS one group therapy session, CPT code 90847, for $53.00 per visit. The Sidotis saw the defendant for approximately 35 joint counseling sessions and at $53.00 per visit, the defendant should have been paid $1,855.00 instead of $5,950.00. The resulting overpayment to the defendant was $4,095.00. See Government Exhibits 180-197C.

9. Gary and Ellen Willis sought the defendant's assistance in counseling their son, Aaron. Aaron was the only family member who was actually a patient of the defendant's, however, the defendant billed BCBS for sessions with all three family members.

As a result of billings the defendant submitted, BCBS paid the defendant $5,822.58 for counseling sessions with the Willis'. BCBS was billed for individual therapy sessions for each family member under CPT code 90808. In reality, no sessions should have been billed for Gary or Ellen and Aaron's sessions should have been billed under CPT code 90806, which is for sessions lasting up to 45 to 50 minutes. Aaron saw the defendant for approximately 39 sessions, which at a reimbursement of $33.50 per session, amounted to $1,306.50 instead of $5,822.58. The resulting overpayment to the defendant was $4,516.08. See Government Exhibits 212-234C.

10. The Steger Family, Jeanette and Greg, and Jeanette's two children, Connor and Taylor, also sought counseling from the defendant. As a result of billings the defendant submitted, BCBS paid the defendant $12,415.00 for counseling sessions with the Stegers. The defendant not only billed BCBS for individual sessions with each family member when they were all seen in group sessions, she also billed BCBS for numerous sessions that did not occur, based on the calendar Mrs. Steger kept of her family's activities. In reality, the defendant should have billed a group session for Jeanette and Greg (CPT code 90847), who were seen together, at $73.00 per visit and a group session for Connor and Taylor (CPT code 90847), who were seen together, at $73.00 per visit each time the Stegers went to her office for a total of $146.00 per visit. Based on this formula and on the number of visits listed in Mrs. Stegers calendar, the defendant should have billed BCBS for approximately 40 group sessions, at $73.00 per session, for a total of $2,920 instead of $12,415.00. The resulting overpayment to the defendant was $9,495.00. See Government Exhibits, 121-147C.

11. The Ferrucci Family, Kimberly and Mario, and their daughter Ariana, also sought counseling from the defendant. As a result of billings the defendant submitted, BCBS paid the defendant $9,492.00 for counseling sessions with the Ferruccis.[2] Every session billed by the defendant to BCBS for the Ferruccis was a 90808 individual session. Through interviews with the Ferruccis, it was learned that Ariana attended no more than eight sessions with the defendant and each session was less than an hour. Ariana's sessions should have been billed as 90806 (Individual sessions for 45-50 minutes). Kimberly Ferrucci never saw the defendant without Mario being present, so all individual session billings for Kimberly submitted by the defendant are invalid. Individual sessions for Kimberly and Mario on the same dates should have been billed as group sessions (90847) instead of two individual sessions. As a result of all of the changes made to the billings for the Ferruccis, the defendant should have been reimbursed $3,176.00 instead of $9,492.00. The resulting overpayment to the defendant was $6,316.00. See Government Exhibits, 148-179C.

12. The combined overpayments made to the defendant, as a result of her false billings for these five families, were $27,089.08. The average overpayment per family then was $5,417.82. During the time period under investigation, the defendant had a total of 343 patients. Of those patients, 106 were individuals who did not appear to have any family members who were patients of the defendant. There were 94 families (defined as two or more members of a family) who were patients of the defendant. Assuming that the defendant correctly billed the individual patients, which overlooks the likelihood that the defendant did not see these individuals in sessions lasting 75-80 minutes, I only focused on

---

[2] The defendant was acquitted of this specific count of the Indictment, however I include it because acquitted conduct can be considered in forfeiture calculations and in sentencings in general.

extrapolating the loss over all of the family groups who were patients of the defendant. An average overpayment per family of $5,417.82 taken over 94 families results in an overpayment to the defendant of $509,274.70.

13. Given that the five families listed in the Indictment represented some of the most egregious examples of the defendant's fraudulent billing, perhaps a more accurate reflection of the overpayment to the defendant comes from a separate analysis conducted by BCBS, which I have reviewed and confirmed, of 10 families during the same time period. (Note: Two of the families in the BCBS analysis, the Stegers and Ferruccis, were also in the analysis of the families in the Indictment. The figures in the BCBS analysis for these two families are different as BCBS was not party to the same information I had developed during my investigation.)

14. The process of reviewing these 10 families was the same as I used in reviewing the five families from the Indictment. BCBS developed information on these 10 families based on surveys that the families filled out at BCBS's request or from their analysis of the defendant's billing records which showed a large number of individual visits by family members on the same day or on consecutive days. The biggest difference is that BCBS did not have any information regarding appointments that never occurred, so they simply used the formula of taking all individual sessions (CPT code 90808) for family members that were billed on the same day or on consecutive days and reduced them to one family group therapy session (CPT code 90847).

15.     The results of this analysis were the following families and overpayment figures: Abend-Meyer $3,043.00; Steger $7,675.20; Alaimo $562.15; Ferrucci $2,829.00; Frydrychowski $3,629.16; Hadsell $1,578.57; Morgano $1,520.00; Podosek $2,020.18; Sickau $1,043.08; and Tartaro $2,093.22.  The total overpayment for these 10 families was $25,993.56 for an average overpayment of $2,599.36 per family.  Extrapolated over the 94 families that the defendant was treating during the time period, the total overpayment to the defendant was approximately $244,339.46.

16.     Upon my own review of the defendant's financial information and discussions with the financial analysts at the FBI who were assigned to this case, the government has been unable to locate any assets in the defendant's name that meet its minimum equity thresholds for forfeiture purposes.  As a result, the government seeks a money judgment against the defendant.

17.     I submit that the sum of $125,000.00 for the monetary judgment is a very conservative estimate of monies the defendant received from the health care fraud scheme and is fair and reasonable.

18.     Therefore, based upon all the evidence and testimony provided during the course of the defendant's trial and the information contained above in my affidavit and upon the jury's finding that JAFARI schemed to defraud a health care program, I respectfully submit that the government has established by a preponderance of evidence that a forfeiture money judgment in the amount of $125,000.00 should be entered

against the defendant and ask that the Court issue a Preliminary Order of Forfeiture over the same or in an amount that the Court finds appropriate.

>s/THOMAS W. PROVOST
>Special Agent
>Federal Bureau of Investigation

Sworn to before me this
24th day of November, 2014

s/Patricia L Young
 Notary Public

**PATRICIA L. YOUNG**
**Notary Public, State of New York**
**Qualified in Niagara County**
**My Commission Expires: 11-13-2017**